Edward F. Dutcher, plaintiff in error, *v.* Moses T. Crowell, defendant in error.

### *Error to Ogle.*

An attachment in aid of a suit at law may issue at any *time,* under the provisions of the thirtieth section of the ninth chapter of the Revised Statutes.

The word *"term"* in the thirtieth section of the Attachment Act of 1833 was a misprint, the word in the original law on file being *"time."* The Legislature in the revision of the Statutes in 1845, without doubt, intended to continue in force the provisions of that section with the known construction which had been given it.

Attachment in aid of a suit at law, sued out by the present plaintiff in error against the defendant in error in vacation.

At the May term, 1849, of the Ogle Circuit Court, the Hon. Hugh Henderson of the eleventh Judicial Circuit presiding, the cause coming on to be heard, the writ of attachment was quashed, because it was applied for and issued in vacation.

*J. O. Glover & B. C. Cook*, for the plaintiff in error.

But a single question is presented by the record in this case. Did the Court err in quashing the writ of attachment?

In the Revised Laws of 1833, the word *"time"* in the thirtieth section of the Attachment Act was misprinted *"term,"* as appeared by an inspection of the original draft on file in the office of the Secretary of State. *Beecher* v. *James*, 2 Scam. 462.

The Legislature, in the Revised Statutes of 1845, did not intend to change the law.

A mere change of phraseology in a revision of the statute will not be deemed to alter the law, unless it evidently appears that such was the intention of the Legislature. *Ex parte* Brown, 21 Wend. 316; *Jackson* v. *Collins*, 3 Cowen, 89; Yates' case, 4 Johns. 359; *The People* v. *Utica Ins.*

*Co.* 15 do. 381; *Crocker* v. *Crane,* 21 Wend. 211; *In re Theriat* v. *Hart,* 2 Hill's ( N. Y. ) R. 380; *Taylor* v. *Delancy,* 2 Cai. Cas. Er. 143, 151.

The intention of the makers of a statute is sometimes to be collected from the cause or necessity of making the statute; at other times from circumstances. Whenever this can be discovered, it ought to be followed with reason and discretion, although such construction seem contrary to the letter of the statute. 9 Bac. Abr. 246; *Crocker* v. *Crane,* 21 Wend. 211; *Jackson* v. *Collins,* 3 Cowen, 89; *The People* v. *Utica Ins. Co.* 15 Johns. 380.

When great inconvenience will result from a particular construction, that construction is to be avoided unless the meaning of the law is plain. 2 Cranch, 386; 9 Bac. Abr. 240.

When the words of a statute are not precise and clear, the construction best adapted to accomplish the objects of the statute will be adopted. *Snell* v. *Bridgewater Cotton Gin Man. Co.* 24 Pick. 296.

If a thing contained in a subsequent statute be within the reason of a former statute, it shall be taken to be within the meaning of that statute. 9 Bac. Abr. 244, and cases there cited.

Such construction ought to be put upon a statute as may best answer the intention which the makers had in view, for *qui hæret in litera hæret in cortice.* 9 Bac. Abr. 246.

A remedial statute should be liberally construed. 9 Bac. Abr. 257, and cases there cited.

*O. Peters,* for the defendant in error.

The word *"term"* used in the 30th section of the Attachment Act, ( Rev. Stat. 70,) has a fixed, legal signification. As applied to Courts, it means that time during which the Court is held open for the trial of causes. Webster's Dictionary, word "Term." This matter was discussed in the case of *Bestor* v. *Powell,* 2 Gilm. 119, and it was not contended that such is the proper meaning of the word, as applied to the Courts and legal proceedings.

On the other side, they rely on the case of *Beecher* v. *James*, 2 Scam. 462, to show that this section is to have the same construction as if the word *"time"* had been used. The case falls far short of justifying any such conclusion. The Court stated the fact that there had been a misprint, and that the word *"time"* and not *"term"* was used in the Act when it passed the Legislature. We do not deny that the original law had the word *"time,"* when the printed copy had *"term."* Not so with the Revised Statutes. I have caused the Secretary of State's office to be inspected, and it is found that the word *"term"* is used in the Act as it passed the Legislature, and as found in the present Revised Statutes. The law, then, as it is at the present time, in terms, only authorizes attachments in aid of a suit at law commenced by summons to be sued out during the term of the Court. But it is said it will be inconvenient to restrict this remedy to such narrow limits. It is a sufficient answer to this to say, that it is not the business of this Court to inquire into the propriety of the enactment, but merely what the enactment is. If the Legislature, in re-enacting the provisions of this section, changed any of its phraseology, this Court will presume it had sufficient reason to do so. The other side contends that it was a mistake of this Legislature. This doctrine will never do to act upon in giving a construction to statutes. It would be disrespectful to a coordinate and independent department of the government, to impute such a mistake. The Legislature must be understood to mean what it says, when its enactments are expressed, as in this case, in clear, unequivocal language. But suppose it to be a mistake, whose business is it to correct it? Not the Courts, surely; but the Legislature itself.

The argument *ab inconvenientia* has been pressed upon the Court. Such an argument may do in cases of doubtful meaning of the law, but never when the language is not doubtful in its import. It is said there is no good reason for limiting the suing out of the process to the term of the Court. The same argument might, with the same force, be applied to the 38th section of the Revised Statutes, 307,

that there is no reason why a garnishee process should be sued out on the return of *nulla bona* only in " term " time ; and yet it would hardly be insisted that the provision of the law should receive such a construction. It is insisted, too, that the word *" term, "* in the 30th section, shall be construed to mean *" time,"* because there is no good reason why an attachment in the case provided for should not be sued out in vacation as well as in " term" time. Such a construction would be an entire perversion of the meaning of language. I have already shown what is the meaning of the word *" term."* The Court is now gravely asked solemnly to adjudicate that that the word *" term "* does not not mean the time during which the Court is holden, but something else ; that term means time, that time means vacation. It might as well be said that vacation means term.

We ask the Court to construe the language of the statute according to its true and legal import, and not to attempt to reform legislation, and to correct the supposed mistakes of the Legislature.

The Opinion of the Court was delivered by

TREAT, C. J. Dutcher commenced an action of *assumpsit* against Crowell, and subsequently sued out an attachment in aid thereof. The Circuit Court dismissed the attachment because it was issued in vacation. The propriety of that decision is the only question in the case. The attachment was sued out under the provisions of the 30th section of the 9th chapter of the Revised Statutes, which section is a literal transcript of the 30th section of the Attachment Act of 1833. Under the latter section, this Court held in the case of *Beecher* v. *James*, 2 Scam. 462, that process of this character might issue in vacation—it appearing, on examination, that the word printed *"term"* in the statute book was *"time"* in the original law on file in the office of the Secretary of State. We entertain no doubt that the Legislature intended to re-enact and continue in force the provisions of this section with the known construction which had been given it ;

but that in the haste of a legislative revision, the printed copy and not the original law was consulted and used. In this way, the phraseology of the section was retained without any design to change its legal effect. We cannot for a moment suppose that the Legislature ever intended to restrict the issuing of this process to the time embraced by the semi-annual sessions of the Circuit Courts. There is as much necessity for this remedy in vacation as in term time, and no good reason why it may not be resorted to at the one time as the other. The Court has nothing to do with the issuing of the process, but it is issued by the clerk as the process in all ordinary actions. If required to be issued during the sitting of the Court, it would be because some action of the Court was necessary before its emanation.

The judgment of the Circuit Court is reversed with costs, and the cause remanded for further proceedings.

*Judgment reversed.*